UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARIES INTERNATIONAL, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. 4:13-cv-3745 |
| | § | |
| ISRAMCO NEGEV 2 LIMITED PARTNERSHIP, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Pending before the Court is the defendant's, Isramco Oil & Gas, Ltd. ("IOG"), motion to dismiss for lack of personal jurisdiction brought pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (Dkt. Nos. 6 & 7).  The plaintiff, Aries International, LLC (the "plaintiff"), has filed a response and supplemental response in opposition to the motion (Dkt. Nos. 6 & 17) and IOG has filed a reply (Dkt. No. 18).  After having carefully considered the motion, responses, reply and the applicable law, the Court determines that IOG's motion to dismiss should be **GRANTED**.

**II.   FACTUAL BACKGROUND AND PARTIES' CONTENTIONS**

The facts underlying this dispute are relatively simple.  The plaintiff is a Texas limited liability company with its principal place of business located at 1301 McKinney Avenue, Suite 3350, Houston, Harris County, Texas.  The defendant, Isramco Negev 2 Limited Partnership ("Isramco Negev"), is a foreign limited partnership organized and existing under the laws of Israel with its principal place of business located at 8 Granit Street, P.O. Box 10188, 49002 Petah-Tikva, Israel.  The defendant, IOG, is a foreign limited partnership organized and existing

under the laws of Israel with its principal place of business also located at 8 Granit Street, P.O. Box 10188, 49002 Petah-Tikva, Israel.

On or about August 29, 2010, the plaintiff and Isramco Negev, and its affiliates, entered into a written Commission Agreement whereby Isramco Negev granted plaintiff the exclusive option, through March 31, 2011, to identify prospective participants to partake in the exploration and/or development of oil and gas licenses owned by Isramco Negev and located in the Levantine Basin, Offshore Israel, as more fully identified in the Commission Agreement and collectively referred to as "Blocks." Pursuant to the terms of the Commission Agreement, Isramco Negev agreed to pay the plaintiff a commission in the event a participant, identified by the plaintiff and proven acceptable to Isramco Negev, entered into a binding agreement with Isramco Negev for the exploration and development of the Blocks. For purposes of the Commission Agreement, Isramco Negev stipulated that it, and its affiliates, maintained an address at 2425 West Loop South, Suite 810, Houston, Harris County, Texas 77027. The Commission Agreement, however, does not define the term "affiliate."

Additionally, the Commission Agreement includes a forum selection clause which provides, in pertinent part, as follows:

> This Agreement shall be construed in accordance with the laws of the State of Texas. The parties stipulate that courts of competent jurisdiction sitting in Houston, Harris County, Texas shall have exclusive venue for all legal actions under or in any way relating to this Agreement.

(Dkt. No. 7, Ex. 1). Haim Tsuff, Isramco Negev's Chairman and Chief Executive Officer, and Yossi Levy signed the Commission Agreement on Isramco Negev's behalf. It is undisputed that the Commission Agreement was executed in Texas and that its terms were drafted, negotiated and/or accepted by the parties, with the advice and consent of their respective legal counsel.

Following execution of the Commission Agreement, the plaintiff recruited, identified and/or introduced Isramco Negev to certain Texas company participants, including ATP Oil and Gas Corporation ("ATPG"), and its affiliate, ATP East-Med Number B.V. ("ATP"), for exploration and development of the Blocks. Subsequently, one or more Farmout Agreements were entered into by Isramco Negev and IOG with ATPG and ATP.[1] Thereafter, Isramco Negev caused certain commissions to be paid to the plaintiff for its services. Notwithstanding this payment, the plaintiff contends that Isramco Negev and IOG still owe it commissions in an amount not less than $373,074 under the Shimshon License Farmout Agreement.

Accordingly, on November 19, 2013, the plaintiff filed suit against Isramco Negev and IOG in the 127th Judicial District Court of Harris County, Texas for breach of contract, specific performance and attorneys' fees. Specifically, the plaintiff alleges that the defendants breached the Commission Agreement dated August 29, 2010, by failing and refusing to pay the plaintiff portions of the commission owed to it under the Commission Agreement. Isramco Negev timely removed the case to this Court on the basis of diversity jurisdiction.

IOG now moves to dismiss the plaintiff's claims against it, alleging that this Court lacks personal jurisdiction over it.

### III.   STANDARD OF REVIEW

Rule 12(b)(2) authorizes a motion to dismiss based on the defense that a court lacks jurisdiction over the defendant. *See* Fed R. Civ. P. 12(b)(2). On such a motion, the plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant. *See Bullion v. Gillespie*, 895 F.2d 213, 216 - 17 (5th Cir. 1990). Where a court rules on such a motion

---

[1] The record indicates that on or about February 23, 2011, IOG entered into a Farmout Agreement with ATPG and ATP regarding the Daniel License and Haim Tsuff and Yossi Levy executed the Agreement on IOG's behalf. The term "affiliate" is defined, for purposes of the Farmout Agreement – Daniel License, to include Isramco Negev as an affiliate. (Dkt. No. 17, Ex. B.)

without a hearing, however, the court must accept, as true, all uncontroverted allegations in the plaintiff's complaint and resolve all factual conflicts presented by the parties' affidavits in the plaintiff's favor. *Id.* at 217. Thus, absent a hearing, the plaintiff need only establish a *prima facie* case for personal jurisdiction. *Id.* Nevertheless, after the plaintiff establishes its *prima facie* case, the burden then shifts to the non-resident defendant to demonstrate a "compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

Generally, in a diversity action, a federal court may exercise personal jurisdiction over a non-resident defendant if two conditions are met: (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment of the United States Constitution. *Irving v. Owens-Corning Fiberglas Corp.*, 864 F.2d 383, 385 (5th Cir. 1989) (citing *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir. 1983)). This Court, however, need only consider whether the exercise of jurisdiction over the non-resident defendant comports with due process "because the Texas Supreme Court has [long] established that the Texas long-arm statute . . . 'reaches as far as the federal constitutional requirements of due process will permit.'" *Irving*, 864 F.2d at 385 (quoting *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 200 (Tex. 1985)).

"The Due Process Clause . . . permits the exercise of personal jurisdiction over a nonresident defendant when (1) [the] defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over [the] defendant does not offend 'traditional notions of fair play and substantial justice.'" *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th

Cir. 2000) (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999)) (internal citations omitted). Both portions of this test must be satisfied in this case before the Court can exercise personal jurisdiction over the defendants. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction over a non-resident defendant is said to exist when the non-resident defendant has "purposefully directed its activities at the forum state and the 'litigation results from alleged injuries that 'arise out of or relate to' those activities.'" *Alpine View*, 205 F.3d at 215 (quoting *Burger King*, 471 U.S. at 472, 105 S. Ct. at 2174) (internal quotation marks omitted). General jurisdiction, on the other hand, is said to exist "where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are 'continuous and systematic.'" *Alpine View*, 205 F.3d at 215 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 - 16, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984)). Nonetheless, even when "minimum contacts" are found, the court must still determine whether allowing such a suit would offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

## IV. ANALYSIS AND DISCUSSION

### The Exercise of Jurisdiction Over IOG

It is apparent from the pleadings and evidence tendered that IOG has no direct contacts with the state of Texas sufficient to warrant this Court's exertion of either specific or general jurisdiction over it in this case. It is undisputed that IOG is a foreign limited partnership organized and existing under the laws of Israel with its principal place of business located at 8

Granit Street, P.O. Box 10188, 49002 Petah-Tikva, Israel. It does not maintain an office in Texas nor does it conduct business in Texas. The plaintiff has provided no evidence to indicate that IOG was a party to or a signatory to the Commission Agreement at issue in this case. Instead, the plaintiff maintains that this Court should exert personal jurisdiction over IOG because: (1) Isramco Negev and IOG's contacts with Texas related to the Commission Agreement and other agreements entered into with companies doing business in Texas, including written agreements made with the plaintiff and ATPG and Isramco, Inc., a Houston corporation; (2) the Commission Agreement's usage of the term "affiliate" contemplated and included IOG, as Isramco Negev's general partner, and is, therefore, binding on IOG pursuant to its very terms; and (3) "IO[G], by virtue of its status as general partner of Isramco Negev 2 . . . and the activities it was involved in prior to and following the Agreement, coupled with the parties stipulated Texas forum selection clause, [has established] sufficient minimum contacts with the State of Texas." (Dkt. No. 13 at ¶ 10.). This Court does not agree. While generally it is true that the parties' relationship with each other may be important in weighing their ties to the forum, the minimum contacts requirement, however, must still be satisfied as to *each* defendant. *Salem Radio Representatives, Inc. v. Can Tel Market Support Group*, 114 F.Supp.2d 553, 556 - 57 (N.D. Tex. 2000) (citing *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S. Ct. 571, 62 L. Ed.2d 516 (1980) (emphasis added)).

    A.    **General Jurisdiction**

IOG argues that it has no contacts with Texas sufficient to support this Court's exercise of general jurisdiction over it in this case. Specifically, IOG contends that it: (a) is a foreign limited partnership organized and existing under the laws of Israel with its principal place of business located in Petah-Tikva, Israel; (b) is a non-resident of the state of Texas; (c) does not

maintain an office in Texas; and (d) does not conduct business in the state of Texas. Thus, it argues that the exertion of jurisdiction over it in this case does not comport with due process requirements and would be unreasonable.

In contrast, the plaintiff argues that IOG's contacts with Texas, as the forum state, are sufficiently systematic such that this Court may exercise jurisdiction over it in that: (1) IOG has entered into contracts with Texas residents and many of those contracts are performable, at least in whole or in part, in Texas; (2) IOG has committed torts, in whole or in part, in the state of Texas; and (3) IOG has recruited residents for employment inside or outside of the state. (Dkt. No. 1, Ex. 1). "To make a prima facie showing of general jurisdiction, [the plaintiff] must produce evidence that affirmatively shows that [the defendant's] contacts with [the forum state] that are unrelated to the litigation are sufficient to satisfy due process requirements." *Alpine View*, 205 F.3d at 217 (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 327 (5th Cir. 1996)).

In order to satisfy due process requirements, a defendant's contacts with the forum state must be substantial, continuous and systematic. *Helicopteros*, 466 U.S. 408, 414 - 19, 104 S. Ct. 1868; *see also Religious Tech Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir. 2003) (internal citations omitted). "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction . . . ." *Johnston*, 523 F.3d at 610 (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (internal citations omitted)).

"General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Johnston*, 523 F.3d at 610 (quoting *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) (internal citation omitted)). These contacts, however, are required to be evaluated *in toto* in order to assess whether they are of the type of continuous and systematic contacts sufficient to satisfy due process. *Johnston*, 523 F.3d at 610 (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986)). Nevertheless, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of [such] contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 610 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Applying the standard set forth above, the Court finds the plaintiff's allegations insufficient to support its exertion of general jurisdiction over IOG in this case. IOG contacts, as alleged by the plaintiff, are neither substantial nor "continuous and systematic." Nor are they of the type sufficient to suggest that it maintains a business presence in the state of Texas. In fact, neither the plaintiff's complaint nor the evidence tendered in support of its responses in opposition to IOG's motion to dismiss describes or is suggestive of substantial *or* systematic contacts between IOG and the state of Texas. The tangential contacts alleged by the plaintiff are not of such a "continuous and systematic" nature necessary to support this Court's exertion of general jurisdiction over IOG in this case. Thus, the plaintiff's allegations are insufficient to establish a *prima facie* showing of general jurisdiction over IOG in this instance.

### B. Specific Jurisdiction

IOG also maintains that its contacts with Texas are insufficient to support this Court's exercise of specific personal jurisdiction over it. It contends that it is neither a party to nor a

signatory of the Commission Agreement made the basis of the plaintiff's claims. Additionally, IOG maintains that no legitimate basis exists for haling it from Israel to Texas for an alleged breach of the Commission Agreement when Isramco Negev, an actual party to the Commission Agreement, has appeared in this action and does not challenge this Court's authority to exert jurisdiction over it for the claims alleged herein. IOG further avers that this Court's exercise of jurisdiction over it would not only offend the traditional notions of fair play and substantial justice but would also not comport with due process requirements.

The plaintiff, in opposition, contends that its "somewhat disingenuous for IO[G] to [now] argue that this Court lacks personal jurisdiction over [it], the general partner of the limited partnership, due to a lack of minimum contacts with the forum stipulated by [Isramco Negev]." (Dkt. No. 13 at ¶ 16). The plaintiff maintains that usage of the term "affiliate" in the Commission Agreement contemplated and encompassed, IOG, as Isramco Negev's general partner. It asserts that this fact is buttressed by the definition attributed to the term "affiliate" in the Farmount Agreement related to the Daniel License entered into by IOG and ATPG. The plaintiff also asserts that IOG "purposefully availed itself of the benefits and protections of the laws of the state of Texas and it purposely directed its activities toward the forum state by establishing minimum contacts." (Dkt. No. 13). Finally, the plaintiff avers that IOG is subject to the forum selection clause contained in the Commission Agreement because it derives benefits from the Agreement and is so closely related to the contractual relationship between the plaintiff and Isramco Negev. This Court does not agree.

The relevant law in the Fifth Circuit provides that to demonstrate a *prima facie* case for specific jurisdiction, the plaintiff must establish that: (1) the non-resident defendant purposefully directed its activities at Texas as the forum state; and (2) the plaintiffs' causes of action arise out

of or relate to the non-resident defendant's forum-related activities. *See Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 868 (citing *Burger King Corp.*, 471 U.S. at 472, 105 S. Ct. at 2174 ). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co. Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (quoting *Worldwide Volkswagen*, 444 U.S. at 297, 100 S. Ct. at 567) (other citation omitted). "To conclude that a defendant should 'reasonably anticipate' being haled into the forum [s]tate requires 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws,' or 'purposefully directs' its efforts toward the forum [s]tate residents." *Panda Brandywine*, 253 F.3d 865, 869 (citing *Burger King Corp.*, 471 U.S. at 475 - 76, 105 S. Ct. at 2174 ).

Here, the plaintiff does not dispute that IOG is a foreign limited partnership organized and existing under the laws of Israel or that it does not conduct business in the state of Texas. Rather, the plaintiff insinuates that specific personal jurisdiction over IOG exists in this case via IOG's status as the general partner of Isramco Negev. Specifically, the plaintiff asserts that the actions and activities between the parties to the Commission Agreement, including meetings and negotiations, involved IOG, as Isramco Negev's general partner, by and through Haim Tsuff in Houston, Texas. It further contends that the forum selection clause contained in the Commission Agreement binds IOG, as Isramco Negev's general partner and unidentified affiliate. (Docket Entry No. 13, ¶¶ 33 - 36 ).

Without more, these allegations are insufficient to support this Court's exertion of specific jurisdiction over IOG in this case. First, as set forth above, while the parties' relationship with each other can prove significant in assessing their ties to the forum, the

minimum contacts requirement must still be met as to *each* defendant partner. *See Salem Radio*, 114 F. Supp.2d at 556 - 57 (citing *Rush*, 444 U.S. at 332, 100 S. Ct. 571). Here, the plaintiff appears to impermissibly blur the notions of liability and personal jurisdiction. *Id.* Moreover, it has failed to direct this Court to any authority supporting the position that a general partner may be subjected to personal jurisdiction in a forum based solely on its status as a general partner of a limited partnership. Second, Haim Tsuff's signature on the Commission Agreement was sufficient to bind only the principal disclosed, Isramco Negev, despite the numerous positions and/or titles held by Haim Tsuff, in his capacity as an officer of the various entities. *See Barger v. Sutton*, No. Civ. A.SA01CA0294FBNN, 2003 WL 22097184, *9, n.74 (W.D. Tex. July 31, 2003) (citing *Fed. Deposit Ins. Corp. v. K-D Leasing Co.*, 743 S.W.2d 774, 776 (Tex. App.—El Paso 1988, no writ) (holding that a corporate officer is not individually liable where use of the term "by" below the name of the principal indicated that he signed on behalf of the disclosed principal)). Third, the fact that IOG contracts with and/or has contracted with Texas residents or entities is not enough to confer jurisdiction in this case, as it is well-settled in the Fifth Circuit that "merely contracting with a resident of the forum state is insufficient to subject the nonresident defendant to the forum's jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (internal citations omitted).

Likewise, the Fifth Circuit "has repeatedly held that the combination of mailing payments . . . [and] engaging in communications related to the execution and performance of [a] contract, . . . between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (internal citation omitted). While it is apparent that specific personal jurisdiction

may be premised on intentionally tortious conduct that is purposefully aimed at the forum state, "mere allegations of tortious interference with a forum resident's contractual rights are not sufficient to establish specific personal jurisdiction." *Central Freight Lines, Inc. v. APA Trasport Corp.*, 322 F.3d 376, 383 (5th Cir. 2003) (citing *Panda Brandywine*, 253 F.3d at 869); *see also Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir. 1988). In fact, "the Supreme Court [has] held that [only] when an alleged tort-feasor's intentional actions are expressly aimed at the forum state, *and* the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, [must] the tortfeasor . . . reasonably anticipate being haled into court there to answer for its tortious actions." *Southmark*, 851 F.2d at 772 (citing *Calder v. Jones*, 465 U.S. 783, 789, 104 S. Ct. 1482, 1487 - 88, 79 L. Ed.2d 804 (1984) (emphasis added)).

In this case, there is no showing that IOG had any relationship with the plaintiff relative to the facts underlying this lawsuit such that it would anticipate being haled into a Texas court because it is neither a party to nor a signatory of the Commission Agreement entered into by and between the plaintiff and Isramco Negev. The record does not demonstrate that IOG expressly directed its allegedly tortious activities at Texas or that it has purposefully availed itself of the Texas market for purposes of the instant action. Therefore, because IOG's contacts are insufficient to give rise to purposeful availment, this Court determines that the plaintiff has failed to establish a *prima facie* case that IOG is subject to specific personal jurisdiction here in Texas.

## V. CONCLUSION

Based on the foregoing analysis, the Court finds that the plaintiff has failed to establish a *prima facie* case that IOG has sufficient minimum contacts with Texas for this Court to exercise personal jurisdiction. Further, it is the opinion of this Court that traditional notions of fair play

and substantial justice would be offended were it to exercise personal jurisdiction over a foreign limited partnership, such as IOG, that does not conduct business in the forum, solely on the basis of its limited partner's contacts with the forum state. Accordingly, IOG's motion to dismiss is **GRANTED** and it is hereby **DISMISSED** from this lawsuit due to this Court's lack of personal jurisdiction over it.

    It is so **ORDERED**.

    SIGNED on this 30th day of September, 2014.

                                                     Kenneth M. Hoyt
                                                     United States District Judge